**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:17-cr-00109 (APM)** |
| | ) | |
| **AZAM DOOST,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO ITS**
**MOTION FOR A PRELIMINARY ORDER OF FORFEITURE, ECF #107**

The United States, by and through its undersigned counsel, hereby replies to defendant's opposition to its motion for a preliminary order of forfeiture.  ECF #107 at 21-23, 14-15. Defendant contends that no forfeiture or, at most, limited forfeiture is appropriate because he no longer has most of the proceeds from the wire fraud or that which was involved in the money laundering.  Under the appropriate statutes and case law, however, defendant's arguments are not relevant.  The money sought by the proposed order of forfeiture, ECF #60-1, were the proceeds of the crimes of wire fraud and involved in the money laundering for which the jury found defendant guilty.  Accordingly, as discussed below, the government respectfully requests that the Court sign the proposed preliminary Order of forfeiture and then sign a final Order of forfeiture at or about the time of the sentencing, which is scheduled for April 10, 2019.

### A.  **Relevant Procedural Background**[1]

As set forth in the government's motion for a preliminary Order of Forfeiture, ECF #60,

---

[1]  A full procedural and factual background is contained in the government's motion for a preliminary order of forfeiture.  ECF #60 at 1-3.  What is set forth here is the relevant background to address defendant's opposition.

on September 24, 2018, the jury returned verdicts of guilty on counts 1-20. ECF #53. This includes the eight wire fraud counts and five money laundering counts.

As the Court is aware from the trial, defendant obtained a loan for up to $15,800,000 from the Overseas Private Investment Corporation ("OPIC") in early 2010. Thereafter, defendant submitted three disbursement requests, in the spring, summer and fall of 2010, respectively, to obtain funds under that loan, including $7,000,000 twice and $1,800,000. The requests had fraudulent information in them as to what and from where equipment was allegedly to be purchased. Further, the requests failed to disclose defendant's affiliation, as required under the terms of the loan, with four of the companies to which funds were sent by OPIC. After receipt of funds into the shell companies' bank accounts, defendant took steps to hide the ownership and control of the funds by moving it. Finally, defendant paid back none of the principal on the loan, despite having funds to do so, and then defaulted completely on the $15,800,000 loan.

On September 28, 2018, the government filed its motion for a preliminary order of forfeiture and a proposed Order. ECF ##60 and 60-1. On March 7, 2019, defendant filed his opposition to the government's motion, ECF #107, [2] to which the United States now replies

**B. Defendant's Arguments**

In his opposition, defendant sets forth his arguments on pages 21-22, as well as pages 14-15, of his combined filing. ECF #107. The relevant legal standard defendant sets forth is basically the same, including cases cited, as what the government set forth. ECF #107 at 21 (defendant's filing); ECF #60 at 4 (government's filing). Accordingly, the parties appear to be in agreement on the appropriate standard.

---

[2] Defendant filed his opposition as the third part of a combined filing. ECF #107 at 21-22, 14-15. The first two parts of defendant's filing were his objections to the PSR, *id.* at 1-3, and his sentencing memorandum, *id.* at 4-20. His PSR objections are noted in the final PSR. ECF #117 at 29-30. As to his sentencing memorandum, the government's reply is in a separate filing today.

Defendant then argues that forfeiture is not appropriate because, he alleges, he "has not realized any gain or profit from his convicted activity." *Id.*[3] His argument appears to be "that a great deal of the monies alleged to constitute or derive from the proceeds traceable to the violations [defendant] was convicted of are in the possession of Greengate in the form of investment in the business and significant quantities of traceable heavy equipment." *Id.* at 21-22. Defendant argument, however, misses the point of what is forfeitable under the relevant statutes.

As discussed in the government's motion for a preliminary order of forfeiture, forfeiture is appropriate for "any property, real or personal, (1) which constitutes or is derived from proceeds traceable to the commission of the wire fraud offenses or (2) involved in the money laundering offenses, or any property traceable to such property." ECF #60 at 2. The jury convicted defendant of all the wire fraud counts and five of the money laundering counts, that is, it found that defendant derived $8,940,742 from the wire fraud and that $5,501,000 was involved in the money laundering. *Id.* at 2-3. For a money judgment, "the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction." *United States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008) (citation omitted); *see id.* at 1374 (government sought a $1.5 million money judgment which "incorporated the entire mail and wire fraud scheme alleged in Counts 1-16 of the indictment"). Further, "money judgments are appropriate where the Government is entitled to criminal forfeiture, even where the amount of the money judgment exceeds the defendant's current assets." *Id.* at 1378 (citation omitted).[4]

---

[3] The Seventh Circuit cases defendant cites, *Venturella* and *Webber*, simply distinguish the purpose of restitution versus forfeiture, *i.e.*, making the victim whole versus disgorging criminal proceeds. *Id.* at 14-15, 21. Those cases rejected defense arguments that to impose both in a case was double counting. *United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009); *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008); *see United States v. Emor*, 850 F. Supp. 2d 176, 215 (D.D.C. 2012).

[4] Defendant asserts he has limited assets presently. ECF #107 at 22 ("[defendant] is living off of credit accounts and the good will of family"), at 19 (same). This is, as noted above, legally

Defendant alternatively argues that the forfeiture should be limited to no more than $838,392. ECF #107 at 22. This is the amount he claims is "presently unaccounted for." *Id.*

As discussed in its opposition to defendant's combined motion for judgment of acquittal and for a new trial, *see, e.g.,* ECF #106 at 13, and its response to defendant's sentencing memorandum being filed today, at 1-5, the government does not agree that most of the money has been accounted for.[5] More importantly, because the proceeds of the crimes came into the hands of defendant, a money judgment for the requested amounts in the proposed preliminary Order of forfeiture is appropriate. What defendant did with the proceeds thereafter, and whether he had any net gain or profit, is not relevant to the forfeiture question. *See, e.g.*, 18 U.S.C. § 981(a)(2)(A) (defining "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture . . . and *is not limited to the net gain or profit realized from the offense*") (emphasis added);[6] *see United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009) ("[t]he plain language of the section 981(a)(1)(C) along with the expansive

---

irrelevant. Nevertheless, regardless of the source of his finances, defendant's extensive travels since his conviction by the jury in September 2018 indicate he has significant access to financial resources. His travels include, among others, to Seattle, WA for 6 nights, staying at the Four Point Sheraton (EFC #103 at 2), to Chicago, IL and Los Angeles, CA for three nights, Lake Tahoe, NV for two nights staying at the Harrah's Lake Tahoe, Los Angeles for three nights staying at the Sheraton LAX, travel to Anaheim, CA for four nights staying at the Fairfield Inn by Marriott (ECF #100 at 1-2), travel to Los Angeles, CA for three nights twice staying at the Sheraton LAX and then the Four Points by Sheraton, Las Vegas, NV for three nights staying at the Ling (ECF #94), travel to Los Angeles, CA for three nights staying at the Sheraton LAX (ECF #75), and traveling to Los Angeles, CA for two nights staying at the Marriott Hotel (ECF 64).

[5] Defendant's argument is almost like that the money from OPIC was a grant the purpose of which he has substantially complied and so he is only responsible for the area of non-compliance. This was not a grant, but a loan that defendant failed to repay. As with any loan, the loan recipient is responsible for the loan repayment regardless of whether he subjectively believes he has complied with the purpose of the loan.

[6] Section 981(a)(2)(C) does allow that, "[i]n cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim." These deductions do not apply here, other than the $2.4 million OPIC received in selling the loan.

definition of 'proceeds' indicates that the statute contemplates the forfeiture of property other than the amounts alleged in the count(s) of conviction").

This case involves a loan agreement in which defendant submitted fraudulent documents to OPIC to obtain loan proceeds, then did not pay back the loan amount to OPIC, as required, and then laundered the funds to hide the location and ownership of the money.  The funds he obtained from OPIC are the proceeds traceable to the commission of the wire fraud offenses and the money he transferred thereafter was involved in the money laundering offenses.  These are the funds of which the jury found defendant guilty and are subject to forfeiture.  The total amount of the counts of conviction for the wire fraud offenses is $8,940,742 and of the money laundering offense is $5,501,000.  The government conservatively seeks a money judgment total of $8,940,742.

## C. Conclusion

For these and other reasons that may be cited at any hearing on this matter, if needed, the United States respectfully requests that the Court sign and enter the Preliminary Order of Forfeiture it previously submitted, ECF #60-1.

Respectfully submitted,

ROBERT A. ZINK
Acting Chief, Fraud Section
/ s /  *Daniel P. Butler*

_____

DANIEL P. BUTLER
D.C. Bar #417718
MICHAEL P. MCCARTHY
D.C. Bar #1020231
Trial Attorneys, Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW, Fourth Floor
Washington, D.C. 20530
(202) 307-2184 (Butler)
(202) 305-3995 (McCarthy)
Daniel.Butler2@usdoj.gov
Michael.McCarthy2@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2019, a copy of the foregoing document has been or will be sent via ECF to counsel for the defendant.

/ s /  *Daniel P. Butler*

_____

Daniel P. Butler
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice